UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DONNA SOLTIS,

        Plaintiff,

v.

J.C. PENNEY CORPORATION and
BRIAN APSEY,

        Defendants.
_____/

Case No. 2:13-CV-323

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Donna Soltis, worked at a J.C. Penney store until she was terminated as part of a reduction in force. Soltis sued J.C. Penney and her previous manager, Brian Apsey, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621 *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. 37.2101 *et seq.* Defendants moved for summary judgment, arguing that Soltis previously released her asserted claims and that the claims fail on the merits. Because Soltis released such claims as part of a previous settlement, the Court will grant Defendants' motion for summary judgment.

### *Background*

Plaintiff began working for J.C. Penney in 2004 as a customer service associate, and was later promoted to the position of department supervisor. (Dkt. #1 at Page ID#2, ¶¶ 7, 9.) In November 2011, Apsey became Soltis's supervisor. (*Id.* at ¶ 12.) On April 30, 2012, Soltis was terminated. (*Id.* at ¶ 30.)

At some point, Soltis brought a worker's compensation action against J.C. Penney. (Dkt. #53-3 at Page ID#304, ¶ 2.) The parties agreed to settle the action for $10,000. (*Id.* at ¶ 5.) On

February 25, 2014, as part of that settlement, Soltis executed a Resignation of Employment, Waiver of Seniority, and Release of All Claims (the Release). (*Id.* at ¶ 5.)  The Release stated:

> I, Donna L. Soltis . . . [v]oluntarily agree . . . to forever release and discharge [J.C. Penney] . . . , its officers, directors, agents, and employees from any and all claims, grievances, arbitrations, demands, causes of action, losses, and expenses of every nature whatsoever known or unknown, arising out of or in connection with my employment by [J.C. Penney], or termination thereof, including, but not limited to, breach of contract (express or implied), wrongful discharge, intentional or negligent infliction of emotional harm or other tort, the [ADEA], [and] Title VII . . . .

(*Id.* at Page ID#317.)  The Release further stated that Soltis had 21 days to review the release, and that Soltis had 7 days after signing the release to revoke the ADEA portion.  (*Id.*)  Finally, the Release recognizes that claims under the Elliot-Larsen Civil Rights Act are among those that are waived.  (*Id.*)

## *Discussion*

J.C. Penney argues that Soltis's claims are barred by the Release, which Soltis signed four months after filing the complaint in this case.  Soltis does not deny that she signed the Release or that she was paid $10,000.  She argues, however, that she did not intend to release the claims in the instant action, and points to the lack of any reference to this action in the Release.  Thus, Soltis argues, she did not knowingly settle the claims at issue in this action.  Soltis further argues that the magistrate judge did not accept the Release as part of the settlement in the worker's compensation action.

Michigan law does not prohibit the release of other claims in conjunction with the settlement of a worker's compensation claim.  *See Beardslee v. Mich. Claim Servs., Inc.*, 103 Mich. App. 480, 486, 302 N.W. 2d 896, 900 (1981).  Where the language of a release is unambiguous and unequivocal, "the scope of a release is governed by the intent of the parties as it is expressed in the release." *Gramer v. Gramer*, 207 Mich. App. 123, 125, 523 N.W.2d 861, 862 (1994).  "If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary

meaning of the language of the release." *Cole v. Ladbroke Racing Mich., Inc.*, 241 Mich. App. 1, 13, 614 N.W. 2d 169, 176 (2000). Extrinsic evidence may not be used to interpret unambiguous language in a release. *Shay v. Aldrich*, 487 Mich. 648, 667, 790 N.W.2d 629, 641 (2010).

The Release expressly states that Soltis agreed to release all claims related to her employment with J.C. Penney and her termination. The language is unambiguous, as it is susceptible to only one interpretation. *See Cole*, 241 Mich. App. at 13-14, 614 N.W. 2d at 176 ("A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." (citation omitted).) Thus, the Court may look only to the language of the Release to determine the intent of the parties, and not to any extrinsic evidence. Accordingly, Soltis's argument that her actual intent did not align with the clear and unambiguous language of the Release must fail.

Soltis's argument that the Release is invalid because it was not accepted by the magistrate judge fares no better. According to the attorney who represented Soltis during the worker's compensation proceeding, the magistrate judge indicated that he did not need the Release at the settlement hearing. (Dkt. #56-20 at Page ID#1017, ¶ 4.) Soltis has failed to explain how that fact affects the validity of the Release. Soltis and J.C. Penney entered into a contract to settle certain claims, and that contract was not invalidated simply because the magistrate judge chose not to include the contract as part of the record at the settlement hearing. Accordingly, this argument fails.

Finally, federal common law controls the validity of the release of Soltis's Title VII and ADEA claims. *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003). Such releases are a type of contract and thus governed by contract law. *Adams v. Phillip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995). The Sixth Circuit uses a balancing test to determine whether a party knowingly and voluntarily released claims. *Nicklin*, 352 F.3d at 1080. That test looks to the following factors: (1) the plaintiff's experience, background, and education, (2) the amount of time the plaintiff had to

3

consider the release; (3) the clarity of the release; (4) the consideration for the release; and (5) the totality of the circumstances. *Id.*

The factors used by the Sixth Circuit weigh strongly in favor of finding that the release is valid. Plaintiff has a high school diploma, and served as a manager at J.C. Penney. Moreover, she was represented by an attorney during the worker's compensation proceedings, and the attorney advised her about the effect of the Release. (Dkt. #56-17 at Page ID#1009, ¶ 4.) The language of the Release was clear, and expressly stated that Soltis agreed to waive all claims related to her employment or termination, including those under Title VII and the ADEA. Plaintiff had 21 days to review the release, and additional time after signing the release to revoke the ADEA provision. J.C. Penney provided Soltis $10,000 in exchange for releasing her claims.[1] Accordingly, the totality of the circumstances demonstrates that Soltis knowingly executed the release.

### *Conclusion*

Because Soltis released the claims at issue in this case, the Court will grant summary judgment to Defendants. The Court need not consider Defendants' arguments that Soltis's claims fail on the merits.

An order consistent with this Opinion shall issue.


Dated: April 16, 2015               /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE

---

[1] Soltis argues that there was no consideration for settling the claims at issue in this action because the $10,000 was in settlement of the worker's compensation claim only. That argument is directly at odds with the language of the Release. (*Id.* at Page ID#317.) *See also Beardslee v. Mich. Claim Servs., Inc.*, 103 Mich. App. 480, 486, 302 N.W. 2d 896, 900 (1981) (finding that there was consideration for settlement of a tort claim released in conjunction with a worker's compensation claim, even though the amount of the settlement was not severable). The Release states that J.C. Penney would pay Soltis $10,000 for releasing claims against it, including those related to her employment or termination. Accordingly, the Court finds that there was consideration for Soltis releasing her claims.